ERDMANN, Judge,
with whom EFFRON, Judge, joins (dissenting):
The majority holds that the military judge did not abuse his discretion in denying the defense request for expert assistance on the subject of false confession. Because I find that the military judge applied an incorrect standard to the defense request for expert assistance and that the defense made an adequate showing that expert assistance was necessary, I would hold that the military judge abused his discretion and would reverse the decision of the lower court.[1]
In denying the defense request for assistance from an expert consultant the military judge concluded:
a. There is nothing in the evidence received to support any suspicion that Accused made false incriminating statements or admissions.
b. Defense candidly admitted that it was requesting Dr. Leo’s assistance to make a preliminary determination of whether accused made false statements. Stated differently, defense counsel is searching for evidence that would assist in her defense of accused, but with little evidence to indicate such evidence exists.
Similar to the military judge, the majority relies on a finding that “defense counsel never presented any evidence to suggest that Appellant’s confession was actually false.” United States v. Bresnahan, 62 M.J. 137, 143 (C.AA.F.2005). The majority also notes that the military judge made findings of fact that support a conclusion that Bresnahan did not make a false confession. Id. In upholding this ruling of the military judge, I am concerned that the majority sets the bar unreasonably high for defendants who are seeking the assistance of an expert consultant in order to prepare and fairly present a defense.
Bresnahan needed to show a reasonable probability “ ‘both that an expert would be of assistance to the defense and that denial of the expert assistance would result in a fundamentally unfair trial.’” United States v. Gunkle, 55 M.J. 26, 31 (C.A.A.F.2001) (quoting United States v. Robinson, 39 M.J. 88, 89 (C.M.A.1994)). The conclusion reached by both the military judge and the majority suggests that the “assistance to the defense” referenced in this test must be in the form of favorable testimony or favorable evidence. Bresnahan, 62 M.J. at 143. However, when a defendant requests assistance from an expert consultant, rather than an expert witness, he should not initially be required to *148 show conclusively that evidence favorable to his case exists.
“Consulting with an expert will often be a necessary precondition to establishing the expert’s necessity as a witness.” United States v. Warner, 62 M.J. 114, 146 (C.A.A.F.2005). Trial defense counsel made clear to the military judge that “the defense is asking for an expert consultant at this time, not an expert witness.... ” Bresnahan needed Dr. Leo’s assistance to determine whether there was evidence to present in support of his contention that his confession was unreliable and that elements of it were false. If Bresnahan were able to develop evidence that his confession was false prior to receiving expert assistance, then he would not need the assistance at all. Requiring “evidence that such evidence exists” as the military judge did here is circuitous reasoning.
To address this “classic military defense counsel dilemma[,]”[2] where defense counsel requests an expert consultant I would require defense counsel to make a colorable showing that a given defense may be reasonably available to the defendant. Using the three-prong test from United States v. Gonzalez, 39 M.J. 459, 461 (C.M.A.1994), the defendant would then be required to show that the expert consultant is necessary to evaluate and potentially present that defense.[3] In this instance, Bresnahan made just such a showing.
Although Bresnahan’s confession was voluntary and therefore admissible at trial, the defense counsel made a colorable showing that there was a reasonable possibility she could raise doubt in the members’ minds as to the reliability of that confession. This was a viable, distinct, and perhaps crucial avenue for the defense to explore.
■Confessions, even those that have been found to be voluntary, are not conclusive of guilt____ [Sjtripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt?
Crane v. Kentucky, 476 U.S. 683, 689, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986).
Trial defense counsel told the military judge that the defense was focusing on Bresnahan’s emotional state at the time of the confession because “as noted by some of the literature, in situations where there are child abuse, medical questions asked, those are situations that can typically have the counter-intuitive notion of false confessions come about.” She also identified for the military judge several factors based on her own research that might suggest that Bresnahan gave a false confession including: (a) the sophistication of the interrogators; (b) the fact that Bresnahan was not able to speak to doctors about the condition of his son; and (c) the fact that the interrogator told Bresnahan that he needed to tell her what he did to his son so that the doctors could save his son’s life. Finally, she noted that this research was the defense’s:
*149 feeble attempt to do what the defense expects Dr. Leo will do with precision and expertise — review the evidence, interview the witnesses, apply known factors in his field of expertise to the facts of this case and determine the likelihood of a false or coerced confession based on the employment of coercive interrogation techniques.
... The defense can go no further in developing this line of defense and needs expert assistance. Perhaps the defense can go no further even with this assistance, but the defense needs an expert to so advise or to help further develop this defense.
Not only did defense counsel show that an attack on the reliability of the confession was reasonably available, the three-prong Gonzalez test was also satisfied. Trial defense counsel made clear that she needed the expert to explore and help develop the case and the possibility that parts of Bresnahan’s confession were false. The need for an expert consultant was supported by a detailed summary of the scientific validity and difficulty of this issue as well as a list of several factors indicating coercive techniques that might have lead Bresnahan to give a false confession.
Defense counsel explained that the expert could recognize and identify factors in the interrogation process and in Bresnahan’s emotional state that might support this contention. She also explained that her own research was not enough to allow her to fully explore the subject because there was too much material and evaluating it required greater expertise than she possessed. In particular, defense counsel noted that because of the depth and complexity of this area, the defense could not properly educate itself in this area for trial.
Under these circumstances it is clear that the expert assistance Dr. Leo could provide was necessary to the defense. The majority does not contest the fact “that Dr. Leo possessed knowledge and expertise in the area of police coercion beyond that of defense counsel and that the defense counsel could benefit from his assistance.” Bresnahan, 62 M.J. at 143. Furthermore, it is clear that without the assistance of Dr. Leo, trial defense counsel was denied the opportunity to explore a reasonable issue that went to the center of the Government’s case. If the members had found Bresnahan’s confession unreliable then they might not have found beyond a reasonable doubt that he had caused the injuries to Austin. Denying Bresnahan the opportunity to present this defense therefore resulted in a “fundamentally unfair trial.” Gunkle, 55 M.J. at 31.
I would find that the military judge abused his discretion in denying the defense request for expert assistance, reverse the decision of the United States Army Court of Criminal Appeals, set aside the findings and sentence, and authorize a rehearing.

. Because I would reverse on Issue II, I would not reach the remaining issues.

. United States v. Warner, 62 M.J. 114, 122 (C.A.A.F.2005) (quoting United States v. Kreutzer, 59 M.J. 773, 777 n. 4 (A.Ct.Crim.App.2004), aff'd, 61 M.J. 293 (C.A.A.F.2005)).

. I note also that this court has found defense counsel to have provided ineffective assistance where they have failed to explore potential defenses available to a defendant. See, e.g., United States v. Wean, 45 M.J. 461, 463 (C.A.A.F.1997) (finding that one of the bases for a finding of ineffective assistance by trial defense counsel was that "defense counsel’s approach to the use of expert witnesses by the Government, coupled with his omission in not using expert testimony, demonstrated a lack of understanding of the law and a failure to properly research and investigate appellant’s case.”); United States v. Scott, 24 M.J. 186, 192 (C.M.A.1987) ("A defense counsel has 'the duty ... to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction.’ ”) (quoting ABA Standards, The Defense Function, Standard 4-4.1 (2d ed.1979)). Trial defense counsel was attempting to diligently explore the circumstances surrounding Bresnahan's confession and the meaning of those circumstances. The confession was critical evidence in the Government’s case. Had she not attempted to explore the reliability of this confession Bresnahan may well have had a case for ineffective assistance of counsel, and yet she was thwarted in her attempt by the military judge’s denial of an expert consultant to assist her.