UNITED STATES

v.

Sergeant Art DIAZ, FR557–47–3006
United States Air Force.

ACM 30342.

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 April 1992.

Decided 8 June 1994.

We reverse Sergeant Diaz' rape conviction because the military judge erred in (1) restricting defense cross-examination of the victim under Military Rule of Evidence 412 and (2) allowing trial counsel to argue that the alleged rapes of MCG and JLH were "remarkably consistent" and rebutted any mistake of fact as to consent. We also reverse his conviction for harassing CAY because the military judge committed plain error by failing to define the term "harass" when instructing the members on the elements of that offense. We affirm the remaining threat and drug convictions.

## CROSS–EXAMINATION

### Facts

Airman JLH arrived at Norton Air Force Base on April 24, 1991. On May 13, 1991, she met appellant in the unit orderly room. He invited her to attend a unit softball game that evening which she did. After the game, they went for a drive in appellant's Porsche sports car. Appellant drove to a somewhat deserted residential side street where he and JLH had sexual intercourse in the car's front seat. Two days later, she reported that appellant raped her. JLH testified appellant did not strike or threaten her to have sex. She said she resisted him by pushing him away, repeatedly telling him, "No," and crying when he entered her. Appellant contended the activity was consensual.

Appellate Counsel for Appellant: Major Gilbert J. Andia, Jr. (argued), Colonel Terry J. Woodhouse, and Colonel Jay L. Cohen.

Appellate Counsel for the United States: Captain Timothy G. Buxton (argued) and Colonel Jeffery T. Infelise.

Before HEIMBURG, PEARSON, and SCHREIER, Appellate Military Judges.

## OPINION OF THE COURT

PEARSON, Judge:

Court members convicted Sergeant Diaz of raping Airman First Class JLH, threatening and harassing Mrs CAY, and using cocaine. Articles 120, 134, and 112a, UCMJ, 10 U.S.C. §§ 920, 934, 912a (1988). They acquitted him of raping Ms MCG and adultery with JLH which was charged as an alternative to the rape. The members sentenced Sergeant Diaz to a dishonorable discharge, 10 years confinement, forfeiture of all pay and allowances, and reduction to E–1. The convening authority reduced the forfeiture to $350 per month for 120 months as an act of clemency but otherwise approved the adjudged sentence.

On cross-examination, defense counsel asked JLH if she ever lied. Other than "[l]ittle lies" as a child, she said no and specifically denied lying about important matters. Counsel asked if she recently lied to her roommate that appellant was the father of her child who was born 10 months after the alleged rape. The prosecutor objected, arguing Military Rule of Evidence 412 prohibited the question because it called for past sexual behavior evidence since appellant was not in fact the father and JLH was unmarried. Defense counsel asserted the question went to JLH's credibility, the central issue concerning the rape, and was not framed to attack her sexual character, reputation, or morals. Defense counsel stated he would focus only on the lie and would not

even ask about marital status in order to avoid any Rule 412 problem.

The military judge held an evidentiary hearing on the issue. JLH testified she mistakenly believed appellant was the child's father but discovered otherwise several months before the birth. She specifically denied talking to the roommate at all about "the issue" and denied telling anyone appellant was the father after she learned otherwise. The roommate testified unflinchingly that the lie occurred only weeks before trial. While the military judge found the evidence "somewhat relevant ... somewhat material," he concluded it was not "constitutionally required" and was thus prohibited by Rule 412 as it concerned the sexual behavior of a nonconsensual sex offense victim. Consequently, the military judge sustained the objection to the question.

### Confrontation and Rule 412

The Confrontation Clause of the Sixth Amendment guarantees an accused the right to cross-examine the witnesses against him in order to test the truth of their testimony. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). While the right is not absolute, it "must not be lightly denied." *United States v. Whitaker*, 34 M.J. 822, 829 (A.F.C.M.R.1992). Although Rule 412 generally precludes admission of evidence about a rape victim's past sexual behavior, the Rule's prohibition must yield to "constitutionally required" cross-examination, that is cross-examination which would produce evidence relevant, material, and favorable to the defense. *United States v. Williams*, 37 M.J. 352 (C.M.A.1993). We conclude the military judge abused his discretion in restricting defense counsel's cross-examination as it was "constitutionally required." *See id.* at 361 (abuse of discretion standard of review).

The question of whether JLH lied about appellant being the father of her child was certainly relevant. An out-of-court lie is a specific act of misconduct which is probative of a witness' truthfulness and always relevant to the issue of credibility. *United States v. Stavely*, 33 M.J. 92 (C.M.A.1991) (applying Mil.R.Evid. 608(b), 609). Moreover, this lie directly involved the appellant.

The question was material, that is, it was of consequence in determining guilt. A rape victim's credibility is a crucial issue when the victim is the only witness who can establish force and lack of consent, particularly when there is no physical evidence of force and the victim makes a· delayed complaint. *Cf. Williams*, 37 M.J. at 360–61.

The evidence sought was favorable to the defense. While JLH may have continued to deny telling a lie to her roommate if the judge allowed the question, she may have also admitted the statement. Even if she continued to deny making the statement, defense counsel may have proved it by extrinsic evidence. *See* Mil.R.Evid. 608(c); *Stavely*, 33 M.J. at 94. We find the issues of lack of consent and force in this case are close calls and evidence that JLH had lied about appellant to her roommate "could very well shift the outcome in appellant's favor." *Williams*, 37 M.J. at 360 (citations omitted). *See Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). Consequently, the restriction on cross-examination was prejudicial to appellant.

Finally, we note the evidence defense counsel sought was not the kind of rape victim character assassination Rule 412 was generally designed to prevent. *See* MCM, App. 22, Mil.R.Evid. 412 at A22–34 (1984). Defense counsel's question only brought Rule 412 into play in the most tangential way as the question inferred unmarried JLH must have had sex out of wedlock with someone else. However, the focus of the question was not on sexual behavior, and it did not require JLH to disclose the true father or subject her to an embarrassing and degrading cross-examination. *See id.* The probative value of the question clearly outweighed any undue prejudice to the victim. *See Williams*, 37 M.J. at 360 n. 7. Also, when restricting defense cross-examination or excluding defense evidence under Rule 412, the military judge should make detailed findings of the reasons for the restriction or exclusion. *United States v. Hollimon*, 16 M.J. 164 (C.M.A.1983).

## ARGUING ONE SPECIFICATION PROVES ANOTHER

### Facts

On August 2, 1987, MCG, an 18–year–old American, went to a party in England while visiting family living there. She met appellant at the party and had sexual intercourse with him in the back seat of his extremely small Austin Mini car and again on the ground nearby. Appellant returned to the party after the acts. MCG followed shortly behind him and reported that appellant raped her. Appellant claimed the acts were consensual. Local British authorities investigated the case but turned jurisdiction over to the Air Force.

Appellant's commander preferred a charge and specification of rape which was investigated pursuant to Article 32, UCMJ, 10 U.S.C. § 832 (1988). The Article 32 investigating officer recommended against taking the case to trial because of proof problems concerning lack of consent and MCG's refusal to testify. The convening authority followed that recommendation and withdrew the charge and specification.

The 1987 MCG charge of rape remained withdrawn until the Article 32 investigation of the 1991 JLH rape allegation. An Air Force criminal investigator testified at the investigation about the earlier rape allegation. The Article 32 investigating officer concluded the evidence concerning that allegation would probably "be inadmissible at trial" of the JLH rape. While the investigating officer recommended JLH "have her day in court," she expressed concern that the prosecution would have its work cut out in proving both lack of consent and force.

After the Article 32 investigation, the prosecution located MCG in California, and she agreed to testify. On January 15, 1992, appellant's commander resurrected the old 1987 rape charge as Additional Charge I. At trial, defense counsel moved to sever the two rape charges under Rule for Courts–Martial 906(b)(10), arguing the spillover effect of the 1987 allegation on the new rape offense. Defense counsel cited numerous grounds for spillover—we sum them up by stating the prosecution's case on the MCG rape was weak and defense counsel feared a prosecution "where there's smoke, there's fire" argument tying the two rapes together.

The military judge denied the motion, but agreed to give a spillover instruction that "evidence introduced to prove one offense carries no inference, and may not be considered to show that an accused is guilty of another offense." At various times throughout the trial, including findings instructions, the military judge gave the spillover instruction. *See United States v. Haye*, 29 M.J. 213, 215 (C.M.A.1989); *United States v. Hogan*, 20 M.J. 71 (C.M.A.1985).

However, over defense objection, the military judge allowed the prosecutor to state in closing argument that the two offenses were so "[r]emarkably consistent" that appellant could not have mistakenly believed the victims consented. The prosecutor argued that after the incident with MCG, appellant was on notice that "No" meant "No," and he stressed in great detail how the offenses basically showed a common scheme or plan to prey on "[g]irls who didn't know a lot of people in the area."

While he allowed the argument, the military judge did not instruct the members on how they should apply any "similarities" between the two offenses in deciding any issue in the case, including mistake of fact, other than his spillover instruction which would appear to tell them not to consider similarities. The military judge also did not specify any legal or factual analysis for his ruling other than he found "enough similarities" which he did not describe except both rapes involved "inviting them to the car, getting them to go to the car."

### One Charged Offense Used to Prove Another

Evidence used to prove one charged offense may be used to prove another charged offense when it meets the criteria for admissibility under Military Rule of Evidence 404(b) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Cox*, 18 M.J. 72 (C.M.A.1984); *United States v. Sterling*, 34 M.J. 1248 (A.C.M.R.

1992). If the criteria for admissibility under Rule 404(b) are not met, a prosecutor may not argue that evidence relating to one charged offense somehow proves another unrelated offense. *See Sterling*, 34 M.J. at 1249 (argument that one urinalysis test "confirmed" another performed one month earlier).

■ Generally, evidence of one rape isn't admissible under Rule 404(b) to prove another rape when the only issue is consent, because the question of consent focuses on the victim and not the alleged offender. "[E]vidence of lack of consent by a female in an earlier sexual act is irrelevant to the issue of whether a different female in a later sexual act with the accused consented to that act." *United States v. Woolery*, 5 M.J. 31, 33 (C.M.A.1978); *see also United States v. Gamble*, 27 M.J. 298 (C.M.A.1988). When, however, the accused asserts an honest and reasonable mistake of fact as to consent, evidence of one rape is admissible to prove another when the circumstances of the offenses are so "significantly similar" that they show a *modus operandi* or plan to have intercourse with the victim, with or without her consent. This type of evidence is probative on the issues of intent and mistake. *United States v. Reynolds*, 29 M.J. 105, 110 (C.M.A.1989).

■ We conclude the similarity between the two alleged rapes falls far short of that required for one to be used to bolster the other. Other than sex in a car with a female, the circumstances of the two offenses were almost totally different. *See Gamble*, 27 M.J. at 305. Additionally, MCG, a civilian, described a forceful physical attack upon her; whereas, JLH, a military member who was both 9 inches taller and 50 pounds heavier than appellant, basically described an act of date or acquaintance rape. *See generally United States v. Webster*, 37 M.J. 670, 674 (C.G.C.M.R.1993) (characteristics of date or acquaintance rape).

Consequently, we conclude the military judge abused his discretion in permitting the prosecutor to argue as he did. Furthermore, by permitting the argument without a Rule 404(b)–type cautionary instruction on how to use the similarities that existed, he left the court members floundering with conflicting guidance which only increased the prejudicial effect of the argument instead of limiting it. *See United States v. McIntosh*, 27 M.J. 204 (C.M.A.1988). As we have already stated, the prosecution's case on the JLH rape was a close one. We conclude the prosecutor's improper argument unfairly tilted the balance in his favor. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988).

■ When a military judge permits a prosecutor to argue that the evidence used to prove one charged offense somehow proves another or rebuts an issue raised by the defense, the military judge should make specific findings of how the criteria of Rule 404(b) are met. In a members trial, the military judge should also instruct on how the members should use the evidence in deciding issues in the case. Of course, in a case where the potential for spillover exists between offenses, the military judge walks a judicial tightrope in permitting any "similarity" argument.

## FAILURE TO DEFINE HARASS

Defense counsel asked the military judge to dismiss the harassment specification, alleged as a violation of Article 134, UCMJ, for failing to state an offense as no such offense appeared in the underlying statute, 10 U.S.C. § 934, or the Manual for Courts–Martial, United States, 1984. The military judge concluded the government's crafted specification alleged an offense and denied relief. However, the military judge did not define the terms "harass" or "harassment" for the members when instructing them on the following elements of the offense: (1) On divers occasions at the time and place alleged, appellant wrongfully harassed CAY by stalking her and calling her repeatedly after being told not to call, trespassing at her home, and by making repeated, unwanted sexual advances, and (2) Under the circumstances, appellant's conduct was to the prejudice of good order and discipline in the armed forces or service discrediting. The defense did not object.

■ The military judge has a *sua sponte* duty to instruct the members on the

elements of an offense, including defining terms essential to a proper understanding of the elements. *See generally United States v. Johnson,* 24 M.J. 101 (C.M.A.1987). "Harassment" was the gravamen of the offense. Without an understanding of what "harass" or "harassment" meant, the members could not properly determine if appellant criminally engaged in that conduct. *United States v. Fayne,* 26 M.J. 528 (A.F.C.M.R.1988). Consequently, we conclude the military judge committed plain error in failing to define essential terms in his instructions. *Johnson,* 24 M.J. at 107.

### REMAINING ISSUES

In light of the relief granted above, we need not discuss the other issues asserted concerning the rape and harassment offenses. The three issues appellant raises pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982) are without merit. *United States v. Robinson,* 38 M.J. 30 (C.M.A.1993) (reasonable doubt instruction); *United States v. Burnette,* 29 M.J. 473 (C.M.A.1990) (defense request for expert consultant in urinalysis case), *cert. denied,* 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 43 (1990); *United States v. Metcalf,* 34 M.J. 1056 (A.F.C.M.R.1992) (defense request for EME testing in urinalysis case), *pet. granted,* 40 M.J. 36 (C.M.A.1994); *see also United States v. Robinson,* 39 M.J. 88 (C.M.A.1994) (defense request for blood secretor test in urinalysis case).

### CONCLUSION

The findings of guilty of using cocaine and communicating a threat are affirmed. The findings of guilty of Charge II and its specification (raping JLH), and Charge III, specification 2 (harassing CAY) are set aside. The convening authority may order a rehearing on the two offenses set aside. If the convening authority does not conduct a rehearing on either of the two offenses, the convening authority will order a rehearing on the sentence only and not reassess the sentence without a rehearing. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990).

Senior Judge HEIMBURG and Judge SCHREIER concur.